**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION AT COLUMBUS**

| | | |
|---|---|---|
| CHRISTOPHER GLEN COOK, | : | Case No. 2:23-cv-1808 |
| | : | |
| Petitioner, | : | |
| | : | |
| vs. | : | Judge Michael H. Watson |
| | : | Magistrate Judge Karen L. Litkovitz |
| HAROLD MAY, WARDEN, MARION | : | |
| CORRECTIONAL INSTITUTION, | : | |
| | : | |
| Respondent. | : | |

**ORDER AND**
**REPORT AND RECOMMENDATION**

Christopher Glen Cook, a state prisoner proceeding without the assistance of counsel, seeks a writ of habeas corpus under 28 U.S.C. § 2254. The matter is currently before the Court on Petitioner Cook's motion for stay and abeyance (Doc. 8) and Respondent Warden's response opposing a stay and further arguing that the Petition is time-barred (Doc. 13). Petitioner did not file a reply in support of his motion to stay. Additional argument concerning the timeliness of the Petition is found in Respondent's Answer. (*See* Doc. 10, PageID 1177-1181). Petitioner did not file a reply to the Answer.

Upon consideration, the undersigned Magistrate Judge **DENIES** the motion to stay and **RECOMMENDS** that the Court **DISMISS** the Petition as time-barred under 28 U.S.C. § 2244(d).

## I.   Background

Petitioner was indicted in November 2017 in the Union County, Ohio, Court of Common Pleas. (State Court Record, Doc. 9, PageID 36-39). After a jury trial, Petitioner was found guilty of three counts of rape and one count each of disseminating matter harmful to juveniles,

gross sexual imposition, and intimidation of an attorney, victim, or witness. (*Id*., PageID 55-56). "[T]he three counts of rape were based on allegations that [Petitioner] had induced two adult women . . . to engage in sexual conduct with his then ten-year-old son, C.C., on several occasions in 2014." *State v. Cook*, 3d Dist. Union No. 14-21-09, 2022-Ohio-97, ¶ 2 (January 18, 2022). On July 3, 2019, Petitioner was sentenced to an aggregate sentence of eighty-two years to life in prison. (Judgment Entry, Doc. 9, PageID 64-770).

Ohio's Third District Court of Appeals affirmed the trial court's judgment on June 22, 2020. *State v. Cook*, 3d Dist. Union No. 14-19-26, 2020-Ohio-3411, ¶ 9 (June 22, 2020). (Doc. 9, PageID 298). Two of the issues raised in this direct appeal concerned trial counsel's alleged ineffectiveness for not challenging the state's expert witness and not obtaining an expert to testify on Petitioner's behalf. (*See* Direct Appeal Brief, Doc. 9, PageID 134-35). After the Court of Appeals affirmed, Petitioner did not seek further review from the Supreme Court of Ohio. (Petition, Doc. 1, PageID 2). Any appeal would have been due by August 6, 2020. *See* Ohio S.Ct.Prac.R. 7.01(A)(1)(a)(i) (setting forty-five-day deadline).

Petitioner sought post-conviction relief in the trial court the next month, on September 18, 2020. (Motion to Vacate, Doc. 9, PageID 300-314). He alleged, among other things, that trial counsel was ineffective for failing to interview potential witnesses or call them to testify, for not allowing Petitioner to testify on his own behalf, for not obtaining an expert witness, and for not challenging the state's expert witness. (*Id*., PageID 308-313).

The trial court dismissed his motion to vacate on March 18, 2021. (Doc. 9, PageID 389-393). Petitioner again appealed, and again, the Court of Appeals affirmed. (*Id*., PageID 395-396, 479-504). Petitioner appealed this decision to the Supreme Court of Ohio. (*Id*., PageID

506-507).  On May 24, 2022, that court declined to review the matter.  (*Id.*, PageID 558).  It does not appear that Petitioner sought review from the Supreme Court of the United States thereafter.

The federal habeas corpus Petition that instituted this case was submitted just under one year later, on May 20, 2023.  (Doc. 1, PageID 15; Doc. 1-1, PageID 16).  It was opened on this Court's docket on May 30, 2023.  In it, Petitioner raises three Grounds for Relief, all alleging that trial counsel was ineffective.  (Doc. 1, PageID 5-8).

On or around August 28, 2023, a few months after the Petition was filed in this Court, Petitioner submitted two documents: a motion seeking a new trial in his state trial court case and a motion seeking a stay in this federal case.  (*See* Additional State Court Record, Doc. 12, PageID 1221-1225; Motion to Stay, Doc. 8).  The motion for a stay is based on the then-pending motion(s) for new trial and discovery in state court.[1]  (Doc. 8, PageID 29).  The motion for new trial included two new "affidavits" intended to show that his trial counsel was ineffective for failing to contact two witnesses as part of counsel's investigation or to have them testify at trial.[2]  (Doc. 12, PageID 1222, 1224-1225).

The trial court denied the motion for a new trial on October 5, 2023.  (Doc. 12, PageID 1227-1230).  Petitioner appealed to the Court of Appeals a third time.  The appeal is briefed and pending as of this writing.  *See State of Ohio v. Christopher Cook*, 3d Dist. Union No. 14-23-0036, available by name or case number search at https://eservices.co.union.oh.us/eservices/

---

[1] In his motion to stay, Petitioner refers to these as "two pending motions."  (Doc. 8, PageID 29).  The Undersigned is unable to locate a separate, recent motion for discovery on the docket of Petitioner's criminal case.  He may, however, be referring to the requests for additional evidence he included *within* the motion for new trial.  (*See* Doc. 12, PageID 1221-1222).

[2] The state trial court referred to these as "notarized letters" rather than affidavits.  (Doc. 12, PageID 1228).  The Undersigned will refer to them as statements.  *See generally LeVay v. Morken*, 590 F. Supp. 3d 1037, 1042 (E.D. Mich. 2022) (quoting *Granada v. United States*, 51 F.3d 82, 84 (7th Cir. 1995) (citing Black's Law Dictionary 58 (6th ed. 1990))) ("A valid affidavit is 'a written or printed declaration or statement of facts, made voluntarily, and confirmed by the oath or affirmation of the party making it, taken before a person having authority to administer such oath or affirmation.'").

(last accessed Feb. 6, 2024).[3]

Petitioner filed a second motion for a new trial on October 6, 2023. (Doc. 12, PageID 1233-1237). The second motion appears to be an identical copy of the first motion for a new trial. (*Compare* Doc. 12, PageID 1221-1225 *with* PageID 1233-1237). The trial court denied the second motion as moot on that basis, on October 16, 2023. It does not appear that an appeal was taken from the October 16, 2023, decision.

In this habeas case, Respondent filed the State Court Record (Doc. 9, 12) and an Answer to the Petition (Doc. 10). Petitioner did not file a reply to the Answer. Respondent also filed a response opposing the motion to stay. (Doc. 13). Petitioner did not file a reply in support of his motion to stay, which is now ready for the Court's consideration, along with Respondent's assertion that the Petition is time-barred.

## II.     Discussion

### A.     <u>Motion to Stay</u>

Petitioner's motion to stay these proceedings is brief. He:

> requests that this honorable Court grant his Motion for Stay and Abeyance because he has two pending motions before the Union County Court of Common Pleas: Motion for New Trial Pursuant to Crim. R. 33(A)(6) and Motion for Discovery Pursuant to Crim. R. 16(A).

(Doc. 8, PageID 29). As noted above, the first motion for a new trial is resolved and pending on appeal, and the motion for discovery appears to refer to the evidentiary requests made within the motion for a new trial. (*See* Doc. 12, PageID 1222).

Petitioner cites to *Rhines v. Weber*, 544 U.S. 269 (2005) in his motion, which permits district courts to grant stays in limited circumstances, but he offers no other argument about why

---

[3] This Court may take judicial notice of court records that are available online to members of the public. *See Lynch v. Leis*, 382 F.3d 642, 648 n.5 (6th Cir. 2004) (citing *Lyons v. Stovall*, 188 F.3d 327, 332 n.3 (6th Cir. 1999)).

a stay would be appropriate here. (*Id.*). *Rhines* described a stay-and-abey procedure that district courts may employ when considering habeas corpus petitions containing unexhausted claims, such as when a petition is a "mixed petition" containing both exhausted and unexhausted claims. *See Hickey v. Hoffner*, 701 F. App'x 422, 427 n.5 (6th Cir. 2017). Exhaustion in this context refers to the statutory requirement that claims be first raised in state court before being brought to federal court. *See* 28 U.S.C. § 2254(b)(1)(A) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State"). The exhaustion requirement gives state courts the first opportunity to correct errors. *Rose v. Lundy*, 455 U.S. 509, 515-19 (1982).

The Supreme Court cautioned in *Rhines* that a "stay and abeyance should be available only in limited circumstances." 544 U.S. at 277. "A court should grant a stay and abeyance only when (1) 'the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court'; (2) where the unexhausted claims are not 'plainly meritless'; and (3) where 'there is no indication that the petitioner engaged in intentionally dilatory litigation tactics.'" *McBride v. Skipper*, 76 F.4th 509, 513 (6th Cir. 2023) (quoting *Rhines*, 544 U.S. at 277-78).

Petitioner presents no argument on any of these factors. He states only that this Court is not deprived of the authority to grant a stay, but he does not articulate any reason the Court *should* do so, except to cite to his then-pending motion(s). (Doc. 8, PageID 29). *Cf. McBride v. Skipper*, 76 F.4th 509, 514 (6th Cir. 2023) ("*Rhines* addressed whether a district court, when asked for a stay, had the authority to grant one. *Rhines* says yes, assuming the three-part stay-and-abeyance test is met.").

Petitioner has not shown a stay is warranted under the *Rhines* test.  He does not demonstrate good cause for his failure to exhaust his remedies (if indeed he has failed to do so) where his motion to stay puts forward no reason at all for his failure.  (Doc. 8).  In this regard, the Undersigned declines to speculate if Petitioner had good cause; the Sixth Circuit "do[es] not require district courts to make arguments that petitioners—even pro se petitioners—fail to make."  *McBride,* 76 F.4th at 514.

> "District judges have no obligation to act as counsel or paralegal to pro se litigants." [*Pliler v. Ford*, 542 U.S. 225, 231 (2004).] We do not require district courts to take up "potentially burdensome, time-consuming, and fact-intensive" investigations. *Id*.; *see also Aruanno v. Sherrer*, 277 F. App'x 155, 158 (3d Cir. 2008) (recognizing that a district court is not required to "perform . . . tasks" to help petitioner "uncover" arguments it can assert in support of a stay).

*Id*. at 514-515 (cleaned up).  Nonetheless, in the interest of justice, the Undersigned will evaluate whether the record that is already before the Court supports a stay under *Rhines*.

As a preliminary matter, and to provide some context for the stay request, the Undersigned observes that although there is a pending state court proceeding (the appeal from the denial of Petitioner's first motion for a new trial), it does not appear that the relevant Ground for Relief in the Petition has not been presented to the state courts and is therefore unexhausted. Petitioner raises three Grounds for Relief in his Petition, all relating to the alleged ineffectiveness of his trial counsel.  The First Ground corresponds to the issue raised in the motion for new trial about failing to contact potential witnesses:

> **GROUND ONE:**  PETITIONER WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE VI AMENDMENT
>
> [Supporting Facts:]  FAILURE TO INVESTIGATE MATTER AT HAND, I.E. DID NOT INTERVIEW POTENTIAL WITNESSES, DIDN'T CHALLENGE STATE'S "EXPERT" WITNESS CINDY KUHR, FAILED TO CALL AVAILABLE EXPERT WITNESS STEPHEN NEUHAUS, Ph.D, DID NOT COMMUNICATE WITH CLIENT, FAILED TO PREPARE AN COMPLETE DEFENSE

(Petition, Doc. 1, PageID 5 (as in original)).[4]

In the motion for a new trial, Petitioner argued that two new statements show that his trial counsel failed to contact two people—Jacquelyn Tackett and Laura Self—as part of counsel's investigation or have them testify as witnesses at trial. (Doc. 12, PageID 1222). Jacquelyn Tackett was one of Petitioner's co-defendants; Laura Self is Tackett's mother.

Petitioner made this allegation earlier in state court. In his post-conviction motion to vacate, he argued that his:

> trial attorney failed to interview various individuals and assure their presence at trial, people who had direct information about the lack of contact between the victim and Jacqueline Tackett and Jessica Jude [his other co-defendant] when he was with Petitioner in their respective homes. These witnesses had information that would impeach the State's key witness, [C.C.].
>
> …
>
> Failure to investigate and insure the witnesses presence at trial is ineffective assistance of counsel and failure to call the witnesses deprived Petitioner of his right to present a defense. See, U.C. CONST., Amend. VI and XIV . . .

(Doc. 9, PageID 308-309, 316). Even before the motion to vacate, Petitioner had raised the issue to the trial court. (*See* Doc. 9, PageID 386 (letter from Petitioner to the trial judge about counsel's alleged failure to call witnesses)). The trial judge rejected Petitioner's ineffectiveness argument and dismissed his motion to vacate:

---

[4] The Second and Third Grounds are, along with their supporting facts:

**GROUND TWO:** DENIED RIGHT TO TESTIFY ON OWN BEHALF.

[Supporting Facts:] I ASKED MY ATTORNEY TO CALL ME TO TESTIFY IN MY DEFENSE AND WAS TOLD I COULD NOT TESTIFY

**GROUND THREE:** INEFFECTIVE ASSISTANCE OF COUNSEL. FAILURE TO PROPERLY IMPEACH WITNESS,

[Supporting Facts:] DID NOT ATTEMPT TO IMPEACH STATES WITNESS WITH PREVIOUS CONTRADICTING STATEMENTS.

(Doc. 1, PageID 7-8 (as in original)).

> Applying *Strickland,* this Court cannot conclude that Defendant's attorney performed deficiently by not calling the individuals identified by Defendant. In support of his arguments, Defendant submits his own affidavit stating that he requested his attorney interview Jessica Jude, Darrell Canterberry, <u>Laura Self</u>, David Tackett, Susan George, <u>Jacqueline Tackett</u>, and the employees at Genesis. Defendant did not provide affidavits from those individuals; therefore, the only evidence as to what those individuals would testify is a mere single sentence as to each contained in Defendant's affidavit. Further, Defendant failed to set forth how he was prejudiced and how it would have impacted the outcome of the trial. The Court finds that Defendant did not set forth sufficient operative facts to establish substantive grounds for relief[.]

(Doc. 9, PageID 392 (emphasis added)).  The Court of Appeals affirmed, without discussing this issue.  *See State v. Cook*, 3d Dist. Union No. 14-21-09, 2022-Ohio-97 (Jan. 18, 2022), *appeal not allowed*, 166 Ohio St. 3d 1509, 2022-Ohio-1687, 187 N.E.3d 561 (May 24, 2022) (table).  (Doc. 9, PageID 479-504).  It does not appear that Petitioner raised this issue to the Supreme Court of Ohio, focusing instead on a separate claim concerning the state's expert witness.[5]  (Doc. 9, PageID 509-518).  His motion for a new trial was filed on September 8, 2023, approximately twenty months after the Court of Appeals' decision affirming the dismissal of his motion to vacate.  Petitioner's letter raising the issue to the trial judge was dated years before that, on April 9, 2018.  (Doc. 9, PageID 386).

The only explanation in the record for Petitioner's delay in filing the motion for a new trial is his assertion therein that he "was unavoidably prevented from discovering this new evidence [Tackett and Self's statements] within 120 days of the verdict due to his incarceration and his defense attorney delaying the release of Cook's discovery file to Cook until after the 120 days had expired."  (Doc. 12, PageID 1222).  But he does not indicate when he received his discovery file or explain how the information in the file led to the statements.  The statements

---

[5] Petitioner's failure to raise the issue to the Supreme Court of Ohio likely constitutes a procedural default of this part of his First Ground for Relief in any event.  *See generally Williams v. Anderson*, 460 F.3d 789, 807 (6th Cir. 2006) ("Because Petitioner failed to fairly present this issue to the Ohio Supreme Court, the claim is procedurally defaulted.")

purport to have been signed in May 2023, a few months prior to their September 2023 filing. (Doc. 12, PageID 1224-1225).  The Undersigned cannot conclude on this record, particularly in the absence of any argument from Petitioner, that there was good cause for Petitioner not bringing this claim to state court earlier.  *Rhines,* 544 U.S. at 277-78.

In addition, the purpose of the stay-and-abey procedure would not be served by a stay under these circumstances.  This procedure evolved to protect petitioners' ability to raise habeas corpus claims where their statute of limitations was running and might expire while they were exhausting their state court remedies.  *See Rhines*, 544 U.S. at 275-76.  Here, as discussed in the next section, the statute of limitations has already run, and the motion for a new trial did not revive it.

Further, because the statute of limitations has run, Petitioner's claims are time-barred and therefore plainly meritless.  *See Johnson v. Curtin*, No. 1:13-cv-338, 2013 WL 5536225, at *2 (W.D. Mich. Oct. 8, 2013) (adopting a report and recommendation that concluded that "a stay is not warranted, because petitioner's proposed claims are clearly meritless, as they are barred by the statute of limitations."); *Lee v. Curtin*, No. 1:09-cv-66, 2012 WL 405555, at *3 (W.D. Mich. Jan. 6, 2012), *report and recommendation adopted*, 2012 WL 405508 (W.D. Mich. Feb. 8, 2012) ("A stay and abatement of this proceeding . . . is not warranted, because petitioner does not and cannot meet the requirement of *Rhines* that the unexhausted claims have facial merit. Petitioner's unexhausted claims are plainly meritless, as they are barred by the statute of limitations.").

As discussed in the next section, the Undersigned will recommend that the Court dismiss this action as time-barred.  For this reason, and because Petitioner has not satisfied the *Rhines* test, the Undersigned **DENIES** Petitioner's motion to stay this matter.  (Doc. 8).

B. **Statute of Limitations**

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) imposes a one-year statute of limitations on the filing of habeas corpus petitions in federal court.  28 U.S.C. § 2244(d).  The limitations period begins and runs from one of four dates:

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

In most cases, "the one-year statute of limitations for habeas petitions filed by state prisoners begins to run on 'the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review.'"  *Hill v. Bauman*, No. 20-1091, 2020 WL 4346669, at *2 (6th Cir. May 21, 2020) (quoting § 2244(d)(1)**(A)**).  That is the case here.

Petitioner does not argue, and the record does not support a finding, that the other alternative dates apply in his case.  Specifically, there is no argument or indication in the record that an "impediment to filing an application created by State action in violation of the Constitution or laws of the United States [was] removed," § 2244(d)(1)**(B)**, or that an applicable "constitutional right . . . was . . . newly recognized by the Supreme Court and made retroactive[]," § 2244(d)(1)**(C)**.

Likewise, § 2244(d)(1)**(D)** does not apply.  Under that subsection, the statute begins to run on "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence."  Petitioner's Grounds for Relief concern trial counsel's alleged deficiencies before or during trial:  his failure to investigate, interview witnesses, challenge the state's expert witness, call an expert witness, communicate with Petitioner, prepare a complete defense, call Petitioner to testify at trial, and to impeach the state's witnesses with prior inconsistent statements.  (Doc. 1, PageID 5, 7-8).  Petitioner would have known about all these alleged deficiencies during his trial.  With respect to his specific claim that trial counsel did not contact Tackett and Self for information or to testify, Petitioner was aware of this issue at least by April 2018, when he wrote to the trial judge about it, or by September 18, 2020, when he raised it in his motion to vacate.  (Doc. 9, PageID 386; Doc. 9, PageID 300-314).  He would have known, or "could have . . . discovered through the exercise of due diligence," § 2244(d)(1)(D), that counsel had not called Tackett and Self to testify at trial when the defense rested on May 14, 2019.  (*See* Doc. 9-1, PageID 845, 1032).  *Cf. Chamblin v. Warden, Chillicothe Corr. Inst.*, No. 1:15-cv-545, 2016 WL 8679076, at *7 (S.D. Ohio June 24, 2016), *report and recommendation adopted*, 2016 WL 4472770 (S.D. Ohio Aug. 25, 2016) ("much of the evidence relied on by the petitioner as support for his new trial motions—i.e., letters from petitioner's children recanting their trial testimony against their father, as well as from other family members essentially vouching for petitioner's character, attacking the credibility of the victims and supporting the victims' recantation of their trial testimony—was either known by petitioner or discoverable in the exercise of due diligence at the time of his trial and certainly before petitioner's conviction became final by the conclusion of direct review.") (internal record citations omitted).

Accordingly, because these alternative starting dates do not apply, the statute of limitations began to run as described in § 2244(d)(1)**(A)**:  on "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."

Petitioner's conviction and sentence in the state court case "became final by . . . the expiration of the time for seeking" direct review in the Supreme Court of Ohio.  28 U.S.C. § 2244(d)(1)(A); *see Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 460 (6th Cir. 2012) (citing *Gonzalez v. Thaler*, 132 S. Ct. 641, 645 (2012)) ("Because [petitioner] failed to pursue direct review all the way to the [United States] Supreme Court, his judgment became final at the expiration of the time for pursuing direct review in state court.").  Here, Petitioner had forty-five days from the date that the Ohio Court of Appeals resolved his direct appeal to seek review in the Supreme Court of Ohio.  *See* Ohio S.Ct.Prac.R. 7.01(A)(1)(a)(i).[6]  That is, he had forty-five days from June 22, 2020, when the Court of Appeals affirmed his conviction and sentence (Doc. 9, PageID 298) to file a timely notice of appeal in the Supreme Court of Ohio—he must have filed by August 6, 2020.  When he did not, his "time for pursuing direct review in state court" expired.  28 U.S.C. § 2244(d)(1)(A)).

---

[6] "To perfect a jurisdictional appeal from a court of appeals to the Supreme Court [of Ohio] as defined by S.Ct.Prac.R. 5.02(A), the appellant shall file a notice of appeal in the Supreme Court [of Ohio] within forty-five days from the entry of the judgment being appealed."  Ohio S.Ct.Prac.R. 7.01(A)(1)(a)(i).

For a period of time in 2020, appeal deadlines in Ohio were tolled by order of the Supreme Court of Ohio in response to the Covid-19 pandemic.  S*ee In re Tolling of Time Requirements Imposed by Rules Promulgated by Supreme Ct. & Use of Tech.*, 158 Ohio St.3d 1447, 2020-Ohio-1166, 141 N.E.3d 974 (Mar. 27, 2020).  This Tolling Order "tolled various deadlines, including any deadlines imposed by the Ohio Supreme Court's Rules for filing pleadings that were due to expire during an 'emergency period' that retroactively began March 9, 2020, and ended July 30, 2020.  *Scott v. Warden, Noble Corr. Inst*., No. 2:21-cv-4996, 2022 WL 1186184, at *2 (S.D. Ohio Apr. 21, 2022), *report and recommendation adopted*, 2023 WL 2918022 (S.D. Ohio Apr. 12, 2023); *see also* Tolling Order, Section D ("The time requirements imposed by the rules of the Court and *set to expire <u>during</u> the term of this order* shall be tolled.") (emphasis added).  Because the deadline for an appeal by Petitioner was "set to expire" *after* that emergency period and not *during* it, the Tolling Order does not appear to apply to Petitioner's situation.  Neither party suggests that it should or should not.

The one-year (**365 day**) statute of limitation for AEDPA purposes began to run the next

day, August 7, 2020.  It ran for **43 days** until Petitioner filed his motion to vacate on September

18, 2020.  (Doc. 9, PageID 300-314).  The statute did not run while the motion was pending.  *See*

28 U.S.C. § 2244(d)(2) ("The time during which a properly filed application for State post-

conviction or other collateral review with respect to the pertinent judgment or claim is pending

shall not be counted toward any period of limitation under this subsection.").  When the motion

(and the appeal from its denial) was fully resolved—on May 24, 2022, when the Supreme Court

of Ohio declined to hear any further appeal—the statute began to run again.[7]  (Doc. 9, PageID

558).  It ran for the remaining **322 days** (365 – 43 = 322) and expired on **April 11, 2023.**

Thereafter, Petitioner mailed his federal habeas corpus petition to this Court on May 20,

2023, which is considered the date of filing.[8]  (Doc. 1, PageID 15; Doc. 1-1, PageID 16).  The

case was opened on the Court's docket on May 30, 2023.  Because it was filed more than a

month after the one-year statute of limitations expired on April 11, 2023, the Petition is untimely.

Petitioner's motion for a new trial, filed in September 2023, a few months *after* the

federal habeas corpus petition, does not change this conclusion.  Even a "properly filed"[9] motion

---

[7] Any petition for a writ of certiorari from the Supreme Court of the United States filed thereafter would not have tolled the statute of limitations.  *See Lawrence v. Fla.*, 549 U.S. 327, 332 (2007).  ("The application for state postconviction review is . . . not 'pending' after the state court's postconviction review is complete, and § 2244(d)(2) does not toll the 1-year limitations period during the pendency of a petition for certiorari.").

[8] Absent any evidence to the contrary, the Court uses the date that a petitioner signed a petition and deposited it for mailing to the Court as the date of filing.  *See Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008) (citing among other things *Houston v. Lack*, 487 U.S. 266 (1988)) (discussing the "prison mailbox rule").  Here, the Petition says it was signed on May 19, 2023, but that it "was placed in the prison mailing system on 5/20/2023[.]"  (Doc. 1, PageID 15).  The envelope the Petition was mailed in also bears a notation that it was "Put in institutional mail 5/20/2023 @ 3:00pm[.]"  (Doc 1-1, PageID 16).  Accordingly, the Undersigned uses May 20, 2023 as the date of filing.

[9] It does not appear that this motion was "properly filed" as would be required for tolling under § 2244(d)(2), because the motion was itself filed late.  *See Chamblin*, 2016 WL 8679076, at *8 (S.D. Ohio June 24, 2016) (collecting cases) ("It is well settled that delayed motions for new trial filed after the conclusion of direct review are state collateral review applications, which will not serve to toll the limitations period if they were denied by the state courts as untimely.").  (*See* Doc. 12, PageID 1227-1230 (the trial court concluded that Petitioner's motion was untimely under Ohio R. Crim. P. 33(A) and that he had not shown "that he was unavoidably prevented from discovery of this purported newly discovered evidence" such that the court had jurisdiction to consider it)).

"does not . . . 'revive' the limitations period (i.e., restart the clock at zero); it can only serve to pause a clock that has not yet fully run." *Vroman v. Brigano*, 346 F.3d 598, 602 (6th Cir. 2003). "Once the limitations period is expired, collateral petitions can no longer serve to avoid a statute of limitations." *Id.* (citing *Rashid v. Khulmann*, 991 F. Supp. 254, 259 (S.D.N.Y. 1998)); *see also Brooks v. McKee*, 307 F. Supp. 2d 902, 905 (E.D. Mich. 2004) (citing *Hargrove v. Brigano*, 300 F.3d 717, 718 n. 1 (6th Cir. 2002) and other cases) ("A state court post-conviction motion that is filed following the expiration of the limitations period cannot toll that period because there is no period remaining to be tolled.").

A habeas corpus petition filed after the statute of limitations has expired is subject to dismissal. *See, e.g., Davis v. Bradshaw*, 900 F.3d 315, 325 (6th Cir. 2018) (a time-barred claim "[g]enerally . . . would prevent a district court from considering the merits" of a habeas petition); *Washington v. Buchanan*, No. 2:12-cv-103, 2012 WL 6029249, at *1 (S.D. Ohio Dec. 4, 2012) (granting motion to dismiss habeas corpus petition filed outside the statute of limitations). However, "under certain circumstances, the AEDPA limitations period may be equitably tolled." *Hill v. Bauman*, No. 20-1091, 2020 WL 4346669, at *2 (6th Cir. May 21, 2020) (citing *Holland v. Florida*, 560 U.S. 631, 645 (2010)). "[A] 'petitioner' is 'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Id.* at 649 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). "The petitioner bears the burden of demonstrating that he [or she] is entitled to equitable tolling." *Allen v. Yukins*, 366 F.3d 396, 401 (6th Cir. 2004) (quoting *McClendon v. Sherman*, 329 F.3d 490, 494 (6th Cir. 2003)).

Here, Petitioner has made no argument in support of equitable tolling. His Petition does not address it. (*See* Doc. 1, PageID 13-14.) He did not file a reply to Respondents' Answer

14

asserting that equitable tolling was not appropriate (*see* Doc. 10, PageID 1179-1180) or file a reply in support of his motion to stay making any argument to that effect. Thus, Petitioner has not satisfied his burden to show that equitable tolling is warranted.

The record likewise does not support such a finding. The Court has no information suggesting that Petitioner diligently pursued his claims between May 24, 2022 (when the Supreme Court of Ohio declined to hear his appeal) and May 20, 2023 (when he filed his Petition). The case dockets of the state court proceedings included in the State Court Record provide no apparent support for an argument that Petitioner was diligently pursuing his rights during this time period. (*See* Doc. 9, PageID 560-577). Nor is there any record support for a finding that some extraordinary circumstance stood in Petitioner's way and prevented him from filing his habeas corpus Petition on time.

The United States Court of Appeals for the Sixth Circuit has held that a petitioner's pro se status, limited law-library access, or lack of access to the transcript, do not warrant equitable tolling. *Hall v. Warden, Lebanon Corr. Inst.*, 662 F.3d 745, 751 (6th Cir. 2011). Ignorance of the law, illiteracy, and lack of legal assistance also do not amount to grounds for equitable tolling. *Allen,* 366 F.3d at 403 ("[I]gnorance of the law alone is not sufficient to warrant equitable tolling."); *Cobas v. Burgess,* 306 F.3d 441, 444 (6th Cir. 2002) ("an inmate's lack of legal training, his poor education, or even his illiteracy does not give a court reason to toll the statute of limitations") (internal citations omitted). And, "[t]he Supreme Court has long held that 'the principles of equitable tolling . . . do not extend to what is at best a garden variety claim of excusable neglect' that causes [a filer] to miss a deadline." *Robertson,* 624 F.3d at 784 (quoting *Irwin v. Dep't of Veterans Affairs,* 498 U.S. 89, 96 (1990)). The Undersigned therefore concludes that Petitioner is not entitled to equitable tolling.

15

Finally, although Petitioner has made no argument to this effect, the Undersigned considers whether a separate exception applies. The Supreme Court has recognized that "a credible showing of actual innocence may allow a prisoner to pursue his constitutional claims . . . on the merits notwithstanding the existence of a procedural bar to relief," such as an expired statute of limitations. *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013). The doctrine, sometimes referred to as the miscarriage-of-justice exception, applies only "to a severely confined category: cases in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted [the petitioner].'" *Id.* at 395 (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)).

> A petitioner must "support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324. In assessing a request for application of the actual-innocence exception, "a court must survey 'all the evidence, old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under rules of admissibility that would govern at trial.'" *Eberle* [*v.* Warden, Mansfield Corr. *Inst.*, 532 F. App'x 605, 612-13 (6th Cir. 2013)] (quoting *Home v. Bell*, 547 U.S. 518, 538 (2006)). . . . Moreover, "'actual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998).

*Hill v. Mitchell*, No. 1:98-cv-452, 2019 WL 1785485, at *8 (S.D. Ohio Apr. 24, 2019). The Supreme Court emphasized that, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." *Calderon v. Thompson*, 523 U.S. 538, 559 (1998) (quoting *Schlup,* 513 U.S. at 324). "Given the rarity of such evidence, 'in virtually every case, the allegation of actual innocence has been summarily rejected.'" *Id*.

Petitioner did not present any such evidence with his Petition. (Doc. 1). His three Grounds for Relief do not refer to any new evidence, but instead describe things counsel did not do that Petitioner believes would have undermined the state's evidence or changed the outcome of trial, such as calling an expert witness or challenging an expert witness. (*Id.*, PageID 5, 7-8)

16

None of these alleged deficiencies by counsel, even if the claims proved meritorious, show that Petitioner is actually innocent as discussed in *Schlup*. The Undersigned is mindful that Petitioner has "maintained his innocence throughout" the case. (Transcript of Sentencing Hearing, Doc. 9-5, PageID 1147). However, even if Petitioner can prove that his trial counsel was ineffective, it does not necessarily follow that Petitioner is actually innocent of all the charges against him.

The new statements filed in state court with Petitioner's motion for a new trial after the Petition likewise do not present a credible claim of actual innocence. In one, Jacquelyn Tackett, one of Petitioner's co-defendants, says:

> I would have testified to the fact that I had never been alone with [C.C.] with or without his father Christopher Cook, that the child had never been in my bedroom and that the last time I saw [C.C.] was in august 2014 while my brother and Mr. Cook were present.
>
> Mr. Cook would never have allowed anyone to hurt his child in any way, he is innocent of these charges.

(Doc. 12, PageID 1224). The other statement, signed by Laura Self (Tackett's mother) is offered as corroborating Tackett's affidavit. (Doc. 12, PageID 1222). Self also says that "[t]he two times Ms. Tackett met [C.C.] in Raymond, ohio I was present along with [others]." (Doc. 12, PageID 1225). These statements appear to be directed toward undermining one of Petitioner's convictions for rape, but do not suggest a factual basis for undermining his other convictions.

Tackett's more recent statement is undercut by her plea of guilty to the offense of obstructing justice related to Petitioner's case. (*See* Post-Conviction Petition, Doc. 9, PageID 304, 311). *See also State v. Cook*, 3d Dist. Union No. 14-21-09, 2022-Ohio-97, ¶ 4 (Jan. 18, 2022) ("Tackett and Jude had each pleaded guilty to a bill of information charging one count of obstructing justice and been sentenced to five years of community control."). More specifically, Tackett pled guilty to the following charge:

**COUNT 5:**  On or about February 9, 2015 through May 14, 2019, in a continuing course of criminal conduct in Union County, Ohio and Hardin County, Ohio, the Defendant, Jacquelyn Tackett, did act with purpose to hinder the discovery, apprehension, prosecution, conviction or punishment of another, Christopher G. Cook, for a crime or to assist Christopher G. Cook to benefit from the commission of a crime, prevent or obstruct any person, by means of force, intimidation or deception, from performing any act to aid in the discovery, apprehension, or prosecution of Christopher G. Cook. And <u>the crime[s] committed by Christopher G. Cook are felonies of the first or second degree and the (sic) Jacquelyn Tackett knew or had reason to believe that the crimes committed by Christopher G. Cook are felonies of the first or second degree</u>.  This conduct constitutes the offense of Obstructing Justice, in violation of Ohio Revised Code Section 2921.32(A)(6), (C)(4), a felony of the third degree.

*See* "Bill of Information" (July 31, 2019) (emphasis added) and "Entry Withdrawing Plea of Not Guilty, Entering Plea of Guilty" (July 31, 20219) ("I hereby knowingly, intelligently, and voluntarily waive these rights and enter a plea of GUILTY to Count 5 of the Bill of Information") in *State of Ohio v. Jacquelyn Tackett*, Union County Case No. 17CR0254, available by name or case number search at https://eservices.co.union.oh.us/eservices/ (last accessed Feb. 6, 2024).  *See also Haynes v. Bergh*, No. 13-10358, 2014 WL 6871263, at *12 (E.D. Mich. Dec. 5, 2014) (citing *Schlup*, 513 U.S. at 331, and *Herrera v. Collins*, 506 U.S. 390, 423 (1993) (O'Connor, J., concurring)) ("new statements from witnesses years after the crime are inherently suspect, and such statements are to be viewed with a degree of skepticism") (cleaned up).

Considering Tackett and Self's statements against the evidence as detailed at length in the decision in Petitioner's direct appeal,[10] and in the absence of any argument from Petitioner, the

---

[10] The Court of Appeals summarized the evidence as follows:

{¶2} In December 2014, Cook's son, C.C., was staying with Cook and Cook's mother, Patricia Cook ("Patricia"), at Patricia's house in Union County. Cook and C.C.'s mother, Amanda Cook ("Amanda"), had divorced three years earlier, and C.C. was staying with Cook and Patricia to celebrate the Christmas holiday. When C.C. was returned to Amanda on Christmas Eve, he appeared upset. At that time, C.C. told Amanda that he did not want to see Cook anymore because he believed that Cook was dealing drugs.

Undersigned concludes that Petitioner has not shown that it is more likely than not that no reasonable juror would have found him guilty of any of the charges.  *See Sudberry v. Warden, S. Ohio Corr. Facility*, 626 F. Supp. 2d 767, 773 (S.D. Ohio 2009) (quoting *Souter v. Jones,* 395 F.3d 577, 590 (6th Cir. 2005)) ("To establish actual innocence, 'a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'"); *see also Currington v. Rewerts*, No. 2:21-cv-10414, 2022 WL 200400, at *4 (E.D. Mich. Jan. 21, 2022), *certificate of appealability denied*, No. 22-1227, 2022 WL 4293080 (6th Cir. Aug. 18, 2022) ("In order to toll the limitations period based on actual innocence, the evidence must exonerate Petitioner of all the charges.").

In sum, the Petition is untimely.  Petitioner has not carried his burden to show that he is entitled to equitable tolling or that he satisfies the miscarriage-of-justice exception such that the Court should consider his untimely habeas corpus petition.  The Undersigned therefore **RECOMMENDS** that the Court dismiss the Petition as time-barred under 28 U.S.C. § 2244(d).

---

{¶3} One month later, in January 2015, C.C. revealed additional information to Amanda about Cook. C.C. told Amanda that Cook had touched him inappropriately. Amanda was also told that Cook paid two women to have sexual intercourse with C.C. The next day, C.C. attempted to jump out of a moving vehicle, prompting Amanda to take C.C. to the emergency room at Memorial Hospital in Marysville, Ohio. There, C.C. told a physician assistant that he was hearing voices and that the voices told him to hurt himself by running into traffic. C.C. also disclosed that Cook had forced him to have sex with two different women. Due to concerns about C.C.'s suicidal ideations and auditory hallucinations, C.C. was transferred to a specialized mental health facility in Zanesville, Ohio.

{¶4} C.C. was released after a brief stay at the Zanesville facility. Because C.C. had disclosed sexual abuse to Amanda and to the medical staff at Memorial Hospital, he was then taken to the Child Assessment Center at Nationwide Children's Hospital ("CAC") for evaluation and treatment. During an interview at the CAC, C.C. disclosed numerous instances of sexual abuse. He disclosed that, beginning in the fall of 2014, two women, whom he identified as Jessica and Jackie, touched his penis on several occasions. C.C. also stated that Cook made him touch the women's breasts and vaginas. According to C.C., these incidents culminated over the course of a weekend in December 2014, when he was forced by Cook to have sexual intercourse with both women. C.C. also disclosed that Cook once touched his penis after he got out of the shower. Finally, C.C. stated that Cook had shown him pornographic videos and that Cook had threatened to kill him and his family if he told anybody about the abuse.

*See State v. Cook*, 3d Dist. Union No. 14-19-26, 2020-Ohio-3411, ¶¶ 2-4, *see also* ¶¶ 18, 24-30, 54-83.

### III.     Certificate of Appealability

A state prisoner seeking federal habeas corpus relief is not automatically entitled to appeal a district court's decision denying relief unless the district court issues a certificate of appealability ("COA").  28 U.S.C. § 2253(c).  A district court should issue or deny a COA "when it enters a final order adverse to the applicant."  Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts.

To be entitled to a COA, a petitioner must demonstrate "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)).  The Sixth Circuit has also cautioned that "a court should not grant a certificate without some substantial reason to think that the denial of relief might be incorrect."  *Moody v. United States*, 958 F.3d 485, 488 (6th Cir. 2020).

"When a district court denies a claim on procedural grounds, the court may issue a COA only if the applicant shows 'that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'"  *Hill v. Bauman*, No. 20-1091, 2020 WL 4346669, at *1 (6th Cir. May 21, 2020) (quoting *Slack*, 529 U.S. at 484).

Here, reasonable jurists would not debate whether the Petition is time-barred.  Likewise, reasonable jurists would not debate whether Petitioner has carried his burden to show that the equitable tolling or miscarriage-of-justice exceptions apply, where he has made no argument advancing those theories.  A certificate of appealability, therefore, should be **DENIED**.

**IV.    Summary and Recommendation**

The undersigned Magistrate Judge **DENIES** Petitioner's motion to stay this matter (Doc.

8), as he has not satisfied the *Rhines* standard. The Undersigned also **RECOMMENDS** that:

1.  the Court **DISMISS** the Petition with prejudice, as it is time-barred.

2.  the Court **DENY** a certificate of appealability.

3.  the Court **CERTIFY** that any appeal of the Court's decision resolving the case would
    not be taken in good faith, and on that basis **DENY** Petitioner leave to proceed *in
    formal pauperis* on appeal.

Petitioner may object to these recommendations in the manner described below. He is reminded

that he must keep this Court informed of his current address and promptly file a Notice of New

Address if he is released or transferred.

**V.    Notice Regarding Objections to this Report and Recommendation**

If any party objects to this Report and Recommendations ("R&R"), the party may serve

and file specific, written objections to it **within fourteen days** after being served with a copy

thereof. Fed. R. Civ. P. 72(b); Rule 12 of the Rules Governing Section 2254 Cases in the United

States District Court. All objections shall specify the portion(s) of the R&R objected to and shall

be accompanied by a memorandum of law in support of the objections. The Court may extend

the fourteen-day objections period if a timely motion for an extension of time is filed.

A Judge of this Court will make a de novo determination of those portions of the R&R to

which objection is made. Upon proper objection, a Judge of this Court may accept, reject, or

modify, in whole or in part, the findings or recommendations made herein, may receive further

evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. §

636(b)(1).

The parties are specifically advised that failure to object to the R&R will result in a waiver of the right to have the District Judge review the R&R de novo, and will also operate as a waiver of the right to appeal the decision of the District Court adopting the R&R. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

**IT IS SO ORDERED**.

February 15, 2024

KAREN L. LITKOVITZ
UNITED STATES MAGISTRATE JUDGE